# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHENZHEN GAIYATUOPU NETWORK TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | **Case No.: 1:24-cv-5111** <br><br> **Judge Jeffrey I. Cummings** <br><br> **Magistrate Judge Beth W. Jantz** |

### REPLY TO PLAINTIFF'S RESPONSE (ECF No. 47) TO MOTION (ECF No. 31)

Defendant Shenzhen Aixiong Technology Co., Ltd. d/b/a SWEETFULL® (the "Moving Defendant"), through its undersigned counsel, respectfully submits this Reply to Plaintiff's Response (ECF No. 47 to Moving Defendant's Motion to Dissolve TRO (ECF No. 31; hereinafter, the "Motion").

The first (though not the only) point Moving Defendant respectfully seeks to clarify is that during the December 6 telephone conference, the undersigned counsel discussed the attempt to resolve the pending Motion with Plaintiff's counsel, though Plaintiff's counsel's proposal was rejected for being unreasonable to Moving Defendant.

Another point Moving Defendant respectfully seeks to clarify is that the Motion is **primarily** a motion to **vacate** the TRO, rather than primarily a motion to modify it ("For these reasons, the Court should dissolve the TRO entirely and deny Plaintiff's (future) motion for a preliminary injunction." Motion at page 15.).

It is worth noting that, just several hours ago, Plaintiff filed a motion for Preliminary Injunction against Moving Defendant without first consulting the undersigned counsel to determine whether there was an objection to the motion or the proposed briefing schedule, **in violation of the Court's rules**. Given that the legal standards for a TRO and a PI are the same, and considering Moving Defendant's **urgent** need to lift the imposed restrictions, Moving Defendant respectfully requests that the Court rule on the TRO/PI as it pertains to Moving Defendant at its earliest convenience.

For the following reasons (as already presented in the Motion), which are highlighted here in reply to Plaintiff's Response [47], the TRO (and the potential PI) is inappropriate and should be vacated in its entirety.

## I. Plaintiff Does Not Even Have A Fair Chance of Success On the Merits

Though even the Federal Circuit itself questions whether the sliding-scale jurisprudence remains good law, Moving Defendant agrees with Plaintiff to the extent that at a minimum, a plaintiff must demonstrate that it has **at least** a fair chance of success on the merits for a TRO/PI to be appropriate. *See Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018)

("Even accepting (without deciding) the theory that our sliding-scale jurisprudence remains good law after *Winter*, we conclude that appellants have not shown any probability of success on the merits, so that a preliminary injunction would not be appropriate even under the most lenient sliding-scale standard."). Here, Plaintiff does NOT even demonstrate a fair chance of success on the merits of supporting a TRO/PI. It is the Moving Defendant's consistent position that Plaintiff's '544 Patent is invalid. However, should the Court hold that the patent is valid, the Moving Defendant asserts that its Accused Product does not infringe the '544 Patent.

To begin with, Moving Defendant is NOT leaving the invalidity/non-infringement analysis to the Court's imagination. A design "is better represented by the photographic illustration than it could be by any description, and a description would probably not be intelligible without the illustration." *Dobson v. Dornan*, 118 U.S. 10, 14 (1886). The Patent and Trademark Office has made the same observation. Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006) ("As a rule the illustration in the drawing views is its own best description."). It is therefore believed that comparisons from different views, even without additional textual descriptions, can adequately illustrate the scope of the '544 Patent and demonstrate its greater similarity to the prior '740 Patent than to the Accused Product.

It is worth noting that Plaintiff's assertion of a "significant" difference between the '544 Patent and the prior art '740 Patent, coupled with its simultaneous accusation that the Accused Product—despite having **more and greater differences**—infringes the '544 Patent, is

**inherently contradictory**. A side-by-side comparison, as shown below, clearly highlights the absurdity of Plaintiff's theories.

| Views | Prior Art (the '740 Patent) | Plaintiff's Patent-in-Suit (the '544 Patent) | Moving Defendant's Accused Product |
|---|---|---|---|
| Back View | | | |





**Invalidity of the '544 Patent:**

As is evident from the comparison, the front cover in the claimed design is relatively flat, closely resembling the front cover of the prior art '740 Patent. In contrast, the design of the Accused Product features a significantly more protruding front face and back face, such that when viewed from the sides, these two covers together form a ball-like shape.

Plaintiff responded that the claimed design includes additional internal components (as shown in the bottom-left figure), which is inaccurate and misleading. The so-called "additional internal components" are, in fact, internal fan blades, as clearly indicated in FIG. 2 of the '544 Patent (the bottom-right figure). Furthermore, the fan blades inside the covers have minimal impact on the overall visual impression due to their concealed positions and the fact that both the prior art and the '544 Patent exhibit similar overall visual effects.

| Plaintiff's Response | FIG. 2 of the '544 Patent |
|---|---|



Plaintiff also responded that the '544 Patent includes parting lines not shown in the '740 Patent. However, it is reasonable to believe that these parting lines are necessarily and inherently present in the prior '740 Patent; otherwise, it would be impossible to install the internal components, such as the fan blades, circuit board, and battery. *See Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) (A single prior art reference anticipates a patent claim if it expressly or inherently describes each and every limitation set forth in the patent claim . . . Inherent anticipation requires that the missing descriptive material is "necessarily present," not merely probably or possibly present, in the prior art.). Also, these parting lines are so insignificant that they would not draw attention from an ordinary observer.

Finally, regarding the motivation to modify the '740 Patent in view of, for example,

CN306581614S and KR3009971280000S, these two references mentioned in the Motion, both from the same field of endeavor as the claimed design as well as the prior '740 Patent, clearly disclose a circular ring at the same position of the back cover. As such, an ordinary designer in the field to which the claimed design pertains would have been motivated to modify the prior art '740 Patent to create the same overall visual appearance as the claimed design and thus render Plaintiff's patent invalid for at least being obvious.

**Noninfringement of the Accused Product:**

It is worth noting that, at the time of this Reply, Plaintiff has not yet provided a side-to-side comparison of Moving Defendant's Accused Product to establish their infringement theory. After all, as is clearly evident from the above illustrations, the Accused Product differs significantly from the '544 Patent in **at least** the following aspects:

**Overall Shape**: The combination of the front cover and the back cover differs substantially in overall shape (see the Side View illustration).

**Circular Ring**: The back cover of the '544 Patent features a circular ring that is absent in the Accused Product (see the Side View and the Top View illustrations).

**Oval Shape with Slot**: The back cover of the Accused Product includes an oval shape (in contrast to the circular shape in the claimed design) with a circle and a slot in the middle, as seen from the back, which is absent from the '544 Patent (and the '740 Patent) (see the Back View illustration)

**Front Button**: The '544 Patent (and the '740 Patent) features a button (likely serving as a switch) on the handle in the front view, which is absent in the Accused Product (see the Front View illustration).

Therefore, to the ordinary observer, the Accused Product and the patented design are so vastly different that the observer would not be deceived into purchasing the Accused Product under the impression that it is the patented design.

In conclusion, since the '544 Patent is very likely to be invalid and/or Moving Defendant's Accused Product does not infringe, Plaintiff does NOT even demonstrate a fair chance of success on the merits of supporting a TRO/PI, which alone is enough to dissolve the TRO and prevent PI's entry.

II. <u>**Plaintiff's Four-Month Delay Between ECF Nos. 18, 19 is At Least Unreasonable For Seeking A Bona Fide TRO**</u>

Regardless of the pretext Plaintiff offers to justify the nearly four-month gap between ECF No. 18 (filed on July 22 to address the Court's question regarding joinder) and ECF No. 19 (filed on November 15 to request a hearing for the TRO), the fact remains that Plaintiff did not need to wait four months to request the TRO. **Plaintiff could have sought the TRO much earlier**. This Court operates with high efficiency. If the situation was truly as urgent as Plaintiff described in ECF Nos. 14 and 15 (the initial motion for the TRO), why did Plaintiff wait for four months instead of filing an emergency motion and expediting the proceedings, as the undersigned

counsel has done?

In summary, Plaintiff's four-month delay between ECF Nos. 18 and 19 is, at the very least, unreasonable for seeking a bona fide TRO.

### III. **Plaintiff's Alleged Harm is Illusory: Plaintiff's Market Disadvantage Results from Fair Competition, Not Unlawful Conduct**

It is worth noting that portable fans are seasonal products, with higher demand during the summer and lower demand in autumn and winter. Therefore, Plaintiff's decrease in sales after summer can be reasonably attributed to the seasonal nature of the product rather than any external factors.

Additionally, it is worth noting that Plaintiff **admitted** in their Response that ASIN B09MHFPW6H belongs to them. *See* Response [47] at Pages 7-9. Upon information and belief, including evidence from web caches on third-party websites, ASIN B09MHFPW6H did not satisfy the marking requirement under 35 U.S.C. § 287 until July 5, 2024, which is after the filing of this lawsuit. *See* **Exhibits 2 and 3**. While Plaintiff may dispute this finding, Moving Defendant looks forward to resolving this issue by discovery. Regardless, this significantly limits the amount of monetary relief Plaintiff could be entitled to, if any, and further undermines the legitimacy of the asset restraint.

Due to the high likelihood of patent invalidity, any disadvantage Plaintiff faces in the market is not the result of any unlawful actions by the Moving Defendant or any other

Defendants but rather a consequence of legitimate and fair market competition. **Plaintiff cannot use the Court to shield itself from the natural dynamics of the marketplace, where competing products, including those of the Moving Defendant, attract consumers through lawful means**. Such harm, if any, is neither irreparable nor unlawful and does not justify the extraordinary remedy of a TRO. A TRO, when abused as a tool to gain unfair competitive advantages, **undermines public interest**.

IV. <u>**The Current $10,000 TRO Bond Plaintiff Posted Is Insufficient, Not Even Sufficient to Cover the Losses Moving Defendant Has Already Incurred Due to the TRO**</u>

The current bond is insufficient to compensate for the losses suffered by Moving Defendant alone, which already exceed $35,000 USD (excluding attorney's fees and costs). *See* **Exhibit 1**. There are 90 Defendants in total, 14 of whom have appeared to defend themselves against this baseless lawsuit. The current bond amounts to less than $112 per Defendant and less than $715 per Appeared Defendant. If the bond remains this inadequate, Moving Defendant would be forced to compete with other Defendants to ensure being compensated to the maximum extent possible. Therefore, Moving Defendant has standing to request that Plaintiff post a higher bond applicable to all Defendants.

**CONCLUSION**

For the above reasons, the Court should dissolve the TRO **entirely** and deny PI, or require

Plaintiff to post a significantly higher bond.

Additionally, Moving Defendant respectfully requests that the Court render a decision on the Motion at its earliest convenience, preferably before the TRO's set expiration date. If the Court is unable to decide on the Motion before the TRO's expiration date, Moving Defendant respectfully requests that the Court:

(1) Issue an order confirming that the TRO has expired on its set expiration date, enabling Moving Defendant to notify the platforms that they are no longer obligated to restrain Moving Defendant's funds and accounts; and

(2) Decide the Motion on its merits *nunc pro tunc*, allowing Moving Defendant to seek damages incurred as a result of the TRO, should the Court find that the TRO was indeed improper.

Although the undersigned counsel is currently in China (a fact likely already known to both the Court and Plaintiff's counsel), in order to address this urgent matter in a timely manner, the undersigned counsel remains available for a telephonic or videoconference hearing 24/7, should a hearing be necessary.

By submitting this reply, Moving Defendant expressly reserves all such rights, claims, defenses, and remedies available at law and equity, including but not limited to, procedural defenses such as misjoinder, lack of personal jurisdiction, insufficient service of process, and any potential counterclaims against the Plaintiff and/or Plaintiff's counsel(s).

Dated: December 11, 2024

                                Respectfully submitted,

                                /s/  Ziqi  Yu

                                Ziqi Yu (NDIL Federal Bar No. 346236)

                                procollider@pm.me

                                166 Geary Street

                                STE 1500 #1841

                                San Francisco, CA 94108

                                Telephone: 1 (415) 519-5274

                                Attorney for Moving Defendant

# CERTIFICATE OF SERVICE

I CERTIFY that on December 11, 2024, I electronically filed REPLY TO PLAINTIFF'S RESPONSE (ECF No. 47) TO MOTION (ECF No. 31), as well as its three (3) exhibits, on the CM/ECF system. These documents will be served, via the system's electronic mail, to all counsel of record.

DATED:   December 11, 2024

/s/ Ziqi Yu

Ziqi Yu (NDIL Federal Bar No. 346236)

procollider@pm.me

166 Geary Street STE 1500 #1841

San Francisco, CA 94108

Telephone: 1 (415) 519-5274

Attorney for Defendant Shenzhen Aixiong Technology Co., Ltd.

d/b/a SWEETFULL®